# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREENSPRING QUARRY** **ASSOCIATION, INC.,** | * | |
|     Plaintiff | * | |
| v. | * | **CIVIL NO. JKB-17-645** |
| **BEAZER HOMES CORP.,** | * | |
|     Defendant | * | |

* * * * * * * * * * * *

| | | |
|---|---|---|
| **THE HIGHLANDS AT GREENSPRING,** **QUARRY ASSOCIATION, INC.,** | * | |
|     Plaintiff | * | |
| v. | * | **CIVIL NO. JKB-17-646** |
| **BEAZER HOMES CORP.,** | * | |
|     Defendant | * | |

* * * * * * * * * * * *

## MEMORANDUM AND ORDER

The plaintiffs in these related cases filed separate complaints against Defendant Beazer Homes Corporation in the Circuit Court for Baltimore County, Maryland. (Compls., 17-645 ECF No. 2; 17-646 ECF No. 2.) Plaintiff Greenspring Quarry Association, Inc. ("GSQA") is a master property owner's association of a mixed residential and commercial development, and Plaintiff The Highlands at Greenspring Quarry Association, Inc. ("Highlands") is a subordinate "village association" of condominium owners. (*Id.*) Plaintiffs brought their respective actions against Defendant, the developer of the relevant properties, each alleging breach of contract (Count I), negligent misrepresentation (Count II), and fraudulent misrepresentation (Count III). (*Id.*) Defendant, in turn, removed both actions under federal diversity jurisdiction (Notices of

Removal, 17-645 ECF No. 1; 17-646 ECF No. 1), and now moves to dismiss both cases pursuant to Federal Rule of Civil Procedure 12(b)(6) (17-645 ECF No. 16; 17-646 ECF No. 16). Both motions are fully briefed (17-645 ECF Nos. 18, 19; 17-646 ECF Nos. 17, 18), and no hearing is necessary, *see* Local Rule 105.6 (D. Md. 2016). For the following reasons, both of Defendant's motions shall be denied.

## I.  STANDARD FOR DISMISSAL FOR FAILURE TO STATE A CLAIM

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## II. BACKGROUND[1]

At the outset, the Court notes that the Complaints and attached documents in the above-captioned cases are virtually identical to one another (including the paragraph enumeration). For convenience and efficiency, where the pertinent information may be found at the equivalently numbered location in either document, the Court will refer cumulatively to "the Complaints."

Defendant acquired certain lands in Baltimore County, Maryland, in 2005 and thereafter began development of Quarry Lake at Greenspring (the "Development"). (Compls. ¶¶ 2, 8.) Defendant filed articles of incorporation for GSQA and for Highlands (collectively, "the Associations") on July 21, 2006, and September 13, 2006, respectively. (*Id.* ¶ 2.) Defendant then allegedly caused its employees to occupy the initial positions on both Associations' boards of directors. (*Id.* ¶ 18.)

On August 1, 2006, Defendant filed a Declaration of Covenants, Conditions, and Restrictions ("Covenant") governing common property to be associated with GSQA; on May 11, 2007, it filed a similar document with respect to property associated with Highlands. (Covenants, 17-645 ECF No. 2; 17-646 ECF No. 2.)[2] Both Covenants had the stated purpose of "protecting the value and desirability" of the Development's common areas. (*Id.* preamble.) Under the Covenants, GSQA and Highlands would retain a management company to arrange for the maintenance of certain common areas within the Development. (*Id.* § 10.) Defendant agreed that it would pay the costs associated with such maintenance until it transferred title to the property over to the relevant Association, at which point the Association would assume

---

[1] Because this memorandum evaluates a Rule 12 motion to dismiss, the Court here summarizes the allegations as presented by Plaintiff in the Complaint. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2] The Covenants are contained within the same ECF entries as the Complaints. According to the page numbering automatically provided by the Court's filing system, the Covenants can be found on pages 38–81 in 17-645 ECF No. 2 and on pages 13–35 in 17-646 ECF No. 2.

responsibility for maintenance costs. (*Id.* § 13.) According to the Complaints, GSQA's and Highlands' respective boards of directors, while still under the control of Defendant's agents, instructed their management companies to begin billing the Associations (and their constituents) in 2008. (Compls. ¶ 24.) However, Defendant did not actually transfer title to the respective common areas until December 15, 2015. (*Id.* ¶ 26.)

## III. ANALYSIS

As with the parallelism in the Complaints, the Court notes that the motions and briefing in the above-captioned cases mirror each other almost perfectly, employing identical arguments. Thus, the Court will refer to the Parties' arguments simultaneously across the two cases.

The Associations bring actions under the theories of breach of contract (Count I), negligent misrepresentation (Count II), and fraudulent misrepresentation (Count III). (Compls. ¶¶ 28–44.) Defendant moves to dismiss Plaintiffs' tort claims only, that is, Counts II and III of the Complaints. (Def.'s Mots. to Dismiss, 17-645 ECF No. 16; 17-646 ECF No. 16.) Defendant argues alternately that (A) Plaintiffs' allegations sound only in contract and not in tort, (B) the economic loss doctrine bars Plaintiffs' tort claims, (C) Plaintiffs' alleged reliance on Defendants' statements was unreasonable, and (D) the Complaints fail to meet the particularity requirement for allegations of fraud as imposed by Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 3–4.) As discussed below, each of Defendant's arguments fails to persuade.

Before considering Defendant's arguments in favor of dismissal, it will be helpful to review a basic concept of Maryland law with respect to principals and their agents. According to the doctrine of respondeat superior, a party may be held liable for the tortious acts committed by its employees within the scope of their employment. *Rusnack v. Giant Food, Inc.*, 337 A.2d 445, 451 (Md. Ct. Spec. App. 1975). For an act to be considered within the scope of employment, it

"must have been in furtherance of the employer's business and authorized by the employer." *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003).

The Complaints allege that Defendant instructed certain of its employees to join the Associations' boards of directors. (Compls. ¶ 18.) Because those employees allegedly joined the boards with Defendant's express authorization and in furtherance of Defendant's goal of establishing and promoting the Development, actions those employees subsequently took as members of said boards were within the scope of their employment. To the extent that any such acts were tortious, the facts as alleged in the Complaint support the conclusion that Defendant has vicarious liability for those acts through the doctrine of respondeat superior.

### A. *Contractual and Non-Contractual Duties*

Defendant argues that the only duties the Complaints allege to flow from Defendant to the Associations are grounded in the contracts between them (*i.e.,* the Covenants) and are therefore insufficient to constitute the required duties for tort actions. (Def.'s Mots. to Dismiss 6-8.) Indeed, the negligent breach of one's contractual duty does not, without more, expose one to liability in tort. *Jacques v. First Nat'l Bank of Md.,* 515 A.2d 756, 757 (Md. 1986). However, when an independent duty accompanies a contractual obligation, that independent duty may support a tort claim. *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 294 (4th Cir. 2002). Board members of a Maryland nonstock corporation owe that corporation the same fiduciary obligations as would board members in any other Maryland corporation. *Shah v. HealthPlus, Inc.*, 696 A.2d 473, 480 (Md. Ct. Spec. App. 1997). Such a fiduciary obligation includes duties of care, loyalty, and good faith, as well as the duty to disclose all facts material to corporate transactions. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 420 (Md. 2009).

The Associations allege Defendant gave its employees controlling roles on the Associations' boards, identifying six board members for GSQA and three for Highlands who were employed by Defendant. (Compls. ¶¶ 20, 24, 25, 35, 40.) Those individuals thereby assumed fiduciary duties toward the respective Associations on whose boards they sat. Because their board membership was allegedly within the scope of their employment with Defendant, Defendant arguably incurred the same duties (and accompanying liability) through the application of respondeat superior. Accordingly, GSQA and Highlands have each alleged that Defendant owed it a duty of care that was independent of any duty existing by operation of the Covenant, and Defendant's first argument for dismissal fails.

### B. *The Economic Loss Doctrine*

Even if Plaintiffs did allege Defendant owed them duties of care, Defendant argues that the economic loss doctrine precludes counts like Counts II and III, where purely economic damages are being sought. (Mems. in Supp. of Def.'s Mots. to Dismiss 8–9.) The economic loss doctrine refers to the principle that tort liability shall not extend to "negligence that causes purely economic harm in the absence of privity, physical injury, or risk of physical injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017). Defendant ignores a crucial element of the economic loss doctrine in that it only applies in situations in which the parties are not in privity or its equivalent (often referred to as demonstration of "an intimate nexus"). *Jacques*, 515 A.2d at 761. The reason for imposing liability for economic damages only upon a finding of privity or its equivalent is "to limit the defendant's risk exposure to an actually foreseeable extent, thus permitting a defendant to control the risk to which the defendant is exposed." *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 596 (Md. 2000). The privity-equivalent analysis employed by Maryland courts

considers the closeness of the parties—"especially one party's reliance on the other party's exercise of due care." *Balfour Beatty*, 155 A.3d at 456. It also looks for "linking conduct— enough to show the defendant knew or should have known of the plaintiff's reliance." *Id.* at 457.[3]

In the instant case, the Associations have done more than enough to demonstrate an intimate nexus between themselves and Defendant. Not only was Defendant in privity with the Associations by virtue of the Covenants into which it entered, but, as explained above, the Associations have alleged that Defendant owed them each duties of care by virtue of Defendant's assignment of its employees to roles on the Associations' boards of directors and by operation of the doctrine of respondeat superior. Based on the closeness of Defendant to the Associations, its risk for tort liability was entirely foreseeable. The economic loss doctrine does not preclude the Associations' tort claims for economic losses.

### C. Reasonable Reliance

Defendant next argues Plaintiffs have failed to allege that it was reasonable for them to rely on Defendant's allegedly negligent or fraudulent misrepresentations. (Mems. in Supp. of Def.'s Mots. to Dismiss 10–11.) Each of the torts alleged in this case includes an element that the plaintiff justifiably or reasonably relied on the representation at issue. *See Swinson v. Lords Landing Vill. Condo.*, 758 A.2d 1008, 1016 (Md. 2000). Without addressing the question of the reasonableness of their reliance, the Court accepts the Associations' invitation to consider equitable justification for them to have acted on the alleged misrepresentations of Defendant's agents. (*See* Pls.' Mems. in Resp. 9–10, 17-645 ECF No. 18; 17-646 ECF No. 17.) A corporate

---

[3] It bears noting that Maryland has historically drawn a distinction between tort actions for purely economic losses in the contexts of negligence and strict liability, which have traditionally been prohibited, and those in the context of fraud, which have traditionally been allowed. *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1332–33 (Md. 1994).

7

entity acts and receives knowledge through its agents and only through them. *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 405 (1994). However, the adverse domination doctrine indicates that the "knowledge of an agent whose interests are adverse to the principal cannot be imputed to the principal," and an agent "cannot reasonably be expected to act upon or communicate knowledge of his own wrongdoing to the corporation." *Id.* at 405–06. Accordingly, Maryland has determined that when a corporation's board members allegedly commit a wrong against the corporation, "equitable considerations warrant a shifting of the balance in favor of the corporation or association," and thus, there is a rebuttable presumption that a cause of action against a corporation's directors does not accrue until a disinterested majority replaces the culpable directors in control of the corporation. *Id.* at 408.

The Court will look to the adverse domination doctrine to equitably answer the question of whether the facts as alleged in the Complaints made it unreasonable for the Associations to rely on Defendant's alleged misrepresentations. Plaintiffs allege that through Defendant's agents on the Associations' boards of directors, Defendant misrepresented the Associations' financial obligations concerning maintenance of common spaces. At the time those misrepresentations were allegedly made, the Associations claim that their boards were under the control of those same agents of Defendant. Accordingly, the Court entertains a presumption that the Associations bear no fault for any unreasonableness in their reliance on statements allegedly made by Defendant's agents. Defendant may rebut such a presumption by showing that when the Associations began paying for common area maintenance, the Associations' boards contained persons with the knowledge, ability, and motivation to bring suit. *See Hecht*, 635 A.2d at 408. At present, it has not done so. Therefore, the Court will not grant dismissal based on any purported unreasonableness in the Associations' reliance on Defendant's statements.

### D. Particularity

Defendant's final argument for dismissal is that the Associations have failed to plead the circumstances constituting their claims of fraud with sufficient particularity. (Mots. to Dismiss 11–13). Under Rule 9(b) of the Federal Rules of Civil Procedure, one alleging fraud must specify the time, place, and contents of the allegedly fraudulent statement and identify the person who made it. *Windsor Assocs., Inc. v. Greenfeld*, 564 F. Supp. 273, 280 (D. Md. 1983); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (3d ed. 2017). Plaintiffs have alleged that each bill for common area maintenance that was approved by the Associations' boards of directors while those boards were under Defendant's control constitutes a false representation. (Compls. ¶¶ 35–36, 40.) The Complaints allege the date range of the bills, the content of the bills, and the identities of Defendant's agents who were responsible. (Compls. ¶¶ 18–19, 25, 27.) By including such allegations, the Associations have met their burden under Rule 9(b). Defendant's motion to dismiss will therefore be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs in both of the above-captioned cases have plausibly alleged all of their claims. Accordingly, it is ORDERED that Defendant's motions to dismiss (16-645 ECF No. 16; 16-646 ECF No. 16) are both DENIED. Defendant SHALL ANSWER both Complaints in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

DATED this 26th day of June, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge